UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| THERESA AGBOWO, et al., | No. C 14-01295 LB |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| NATIONSTAR MORTGAGE LLC, | |
| Defendant. | [Re: ECF No. 21] |

## INTRODUCTION

Plaintiffs Theresa Agbowo and Margaret Agbowo sued Nationstar Mortgage LLC ("Nationstar") and Does 1-100 in Alameda County Superior Court for claims related to Nationstar's failure to provide them with a loan modification and subsequent foreclosure upon their property. *See* Notice of Removal, Ex. A ("Complaint"), ECF No. 1 at 14-20.[1] Nationstar removed the action to this court and now moves to dismiss Plaintiffs' First Amended Complaint. *See* Notice of Removal, ECF No. 1; First Amended Complaint ("FAC"), ECF No. 16; Exhibit A to FAC, ECF No. 19; Exhibit B to FAC, ECF No. 18; Motion, ECF No. 21. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable to be determined without oral argument and vacates the August 21, 2014 hearing. Upon consideration of the allegations in the First Amended Complaint, the facts subject to judicial notice, the papers submitted, and the applicable legal authority, the court **GRANTS IN PART** and

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

1  **DENIES IN PART** Nationstar's motion.

2  **STATEMENT**

3  **I. THE FORECLOSURE UPON THE AGBOWOS' PROPERTY**

In 2006, Lazarus's and Theresa's daughter, Margaret, wished to purchase a home. FAC ¶ 7. After discussing the matter with her parents, they decided to purchase the property at 850 53rd Street, Oakland, California, 94608 (the "Property"). *Id.* To purchase it, on September 6, 2006 or September 7, 2006, the Agbowos[2]—Lazarus, Theresa, and Margaret—executed a promissory note and borrowed $417,000 from Home Loan Specialists, Inc. *See* FAC ¶ 7; Request for Judicial Notice ("RJN"), Ex. A ("Deed of Trust"), ECF No. 7-1 at 5-30.[3] The loan was secured by the Property. FAC ¶ 7; Deed of Trust, ECF No. 7-1. Shortly thereafter, the Agbowos remodeled the Property, and Margaret has lived in it since then. *See* FAC ¶ 7.

In July or August 2009, Margaret and Theresa applied to Nationstar for a loan modification. *Id.*

UNITED STATES DISTRICT COURT
For the Northern District of California

---

[2] For clarity's sake, the court notes that "the Agbowos" include Lazarus, Theresa, and Margaret, while "Plaintiffs" include only Theresa and Margaret. Lazarus is not a party to this action.

[3] The court previously took judicial notice of the following documents: (1) a Deed of Trust, dated September 7, 2006, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2006357025 on September 21, 2006; (2) a Notice of Default, dated November 5, 2010 and which relates to Plaintiffs' 2006 loan, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2010332006 on November 10, 2010; (3) a Voluntary Petition filed by Margaret Ogbowo on March 11, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (4) a Summary of Schedules filed by Margaret Ogbowo on April 8, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (5) a Notice of Trustee's Sale, dated November 6, 2012 that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2012376928 on November 8, 2012; (6) a Notice of Trustee's Sale, dated April 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013150789 on April 30, 2013; (7) a Notice of Trustee's Sale, dated August 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013291912 on August 28, 2013; (8) a Trustee's Deed Upon Sale, dated September 30, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013326911 on October 8, 2013; and (9) a Quitclaim Deed, dated December 3, 2013, that was recorded in the Alameda County Recorder's Office as document number 2013389679 on December 23, 2013. *See* Request for Judicial Notice ("RJN"), Exs. A-I, ECF No. 7-1; 5/5/2014 Order, ECF No. 14 at 2 n.3.

¶¶ 8. (Margaret and Theresa do not allege whether this request was granted on not. *See generally id.*)

The next year, Margaret and Theresa fell behind on the mortgage payments. *Id.* ¶ 9. On November 10, 2010, Quality Loan Service Corporation ("Quality Loan"), as the agent for the beneficiary of the Deed of Trust, recorded a Notice of Default stating that the Agbowos were $27,019.50 in arrears on the loan as of November 5, 2010. FAC ¶ 9; RJN, Ex. B ("Notice of Default"), ECF No. 7-2 at 2-6.

To stave off a foreclosure, Margaret filed for bankruptcy in 2011. FAC ¶ 9. She dismissed the bankruptcy action in 2012. *Id.*

In 2012, Margaret and Theresa applied again to Nationstar for loan modification. *Id.* ¶ 10. They hired Hyatt Brokers Associate ("Hyatt") to help them with the process. *Id.* Hyatt faxed the loan modification request (along with a third party authorization) to Nationstar on August 30, 2012. *Id.* On October 10, 2012, Margaret and Theresa supplied Nationstar with additional information in support of their loan modification application. Exhibit A to FAC, ECF No. 19-2.

On November 8, 2012, Quality Loan recorded a Notice of Trustee's Sale stating that the Agbowos were in default and that a trustee's sale would take place on December 5, 2012. FAC ¶ 9; RJN, Ex. E ("First Notice of Trustee's Sale"), ECF No. 7-2 at 47-48.

This trustee's sale did not occur. *See* FAC ¶ 9. Instead, on November 16, 2012, November 19, 2012, December 13, 2012, December 19, 2012, January 3, 2013, January 29, 2013, and February 8, 2013, and March 21, 2013, Margaret and Theresa (through Hyatt) responded to Nationstar's repeated requests for additional information in support of their loan modification application. *See* FAC ¶¶ 11-13; Exhibit A to FAC, ECF No. 19 at 3-5 & ECF No. 19-1 at 1-5.

On April 30, 2013, Quality Loan recorded a second Notice of Trustee's Sale. FAC ¶ 9; RJN, Ex. F ("Second Notice of Trustee's Sale"), ECF No. 7-2 at 50-51. This time, the trustee's sale was scheduled to take place on May 28, 2013. RJN, Ex. F, ECF No. 7-2 at 50-51.

This trustee's sale did not take place, either. *See* FAC ¶ 9. Instead, on May 13, 2013, June 4, 2013, July 12, 2013, July 26, 2013, July 30, 2013, and August 22, 2013, Margaret and Theresa again (through Hyatt) responded to Nationstar's requests for additional information in support of their loan

1  modification application. *See* FAC ¶¶ 11-13; Exhibit A to FAC, ECF No. 19-2 at 1-5,  ECF No. 19-
2  3 at 1-5 & ECF No. 19-4 at 1.  Margaret and Theresa also submitted to Nationstar a new request for
3  a loan modification on July 26, 2013.  FAC ¶ 13.

4      On August 28, 2013 Quality Loan recorded a third Notice of Trustee's Sale.  FAC ¶ 9; RJN, Ex.
5  G ("Third Notice of Trustee's Sale"), ECF No. 7-2 at 53-54.  The trustee's sale was scheduled to
6  take place on September 26, 2013.  RJN, Ex. G, ECF No. 7-2 at 53-54.  Margaret and Theresa
7  (through Hyatt) continued to provide Nationstar with additional information in support of their
8  pending loan modification application.  *See* FAC ¶ 13.  They did so on September 5, 2013,
9  September 11, 2013, September 20, 2013, and September 23, 2013.  *Id.*; Exhibit A to FAC, ECF No.
10  19-5 at 5 & ECF No. 19-6 at 1-3.

11      Despite Margaret and Theresa continually supplying Nationstar with additional information in
12  support of their pending loan modification application, the trustee's sale took place on September
13  26, 2013.  FAC ¶ 9; RJN, Ex. H ("Trustee's Deed Upon Sale"), ECF No. 7-2 at 56-57.  Nationstar
14  purchased the Property for $424,037.53.  FAC ¶ 9; Trustee's Deed Upon Sale, ECF No. 7-2 at 56-
15  57.

16      On December 3, 2013, Nationstar transferred the Property to Jorge Lasada through a Quitclaim
17  Deed.  FAC ¶ 14.

18      Margaret and Theresa did not learn that the trustee's sale actually had occurred until December
19  3, 2013, when an attorney for Nationstar served them with a three-day Notice to Quit the Property.
20  FAC ¶ 15.  The attorney was told that Margaret and Theresa's loan modification application was still
21  pending and was told of the dates on which they submitted additional information to Nationstar.  *Id.*
22  After this, Nationstar apparently took no further action to evict Margaret and Theresa from the
23  Property.  *Id.*

24      By letter dated December 3, 2013 (more than two months after the Property was sold at the
25  trustee's sale), Nationstar notified Margaret and Theresa that their loan modification application was
26  denied.  FAC ¶ 16; Exhibit B to FAC, ECF No. 18.  The letter, which contains numerous errors,
27  states in relevant part:
28      Dear Hyatt N. Agbowo:

C 14-01295 LB
ORDER                                            4

> Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence, received November 15 2013 - regarding your notification of representation of the aforementioned borrowers, and submission of modification related documentation for the above referenced account.  We appreciate you bringing this to our attention, as we take all such matters seriously.
>
> Ater review of the account, it was confirmed that it was stated the property was previously Owner Occupied only by Margaret Agbowo and not Theresa Agbowo.  However, per documentation provided, it was confirmed that a different property address of 890 Street was listed in lieu of [850 53rd Street, Oakland, California 94608].  Because we were unable to validate occupancy, we could not move forward with the modification review in order to postpone the Foreclosure sale that did take place.  As of the date of this correspondence, the property is now reflecting as Real Estate Owner (REO) status.  If you or your client have any additional questions, you may contact the REO Department directly using the information provided below:
>
> REO Department:
> Phone: 1,888-708,4043
>
> At Nationsiar, customer concerns are important to us.  Should you have any general questions other than those referenced in your correspondence, please contact:
>
> CustQrnr. Service Department
> Monday through Thursday. 8 a.m., to 8 p.m. CDT
> Friday.  8 am, to 6p.m. CDT
> Saturday,8 a.m. to 2p.m. CDT
> Toll-free number: 1.888-480,2432

Exhibit B to FAC, ECF No. 18 at 1 (errors in original).  The letter does not inform Margaret and Theresa about their right to appeal the denial of their loan modification application.  *See id.*; *see also* FAC ¶ 17.

## II. THE INSTANT ACTION

Margaret and Theresa filed their Original Complaint against Nationwide and Does 1-100 in Alameda County Superior Court on February 4, 2014.  *See* Original Complaint, ECF No. 1 at 14-20.  They brought claims for (1) "bad faith consideration of mortgage modification"; (2) breach of "CC § 2923.6(c) and (d)" (by which they presumably referred to "California Civil Code" §§ 2923.6(c) and (d)); and (3) fraud.  *Id.* ¶¶ 8-33.  Essentially, they alleged that Nationwide, did not review and consider their loan modification application in good faith and violated certain statutory foreclosure-related requirements.  *See id.* ¶¶ 8, 18, 26, 30.

On March 27, 2014, Nationwide filed a motion to dismiss Plaintiffs' Original Complaint.  *See* Motion, ECF No. 7.  On May 5, 2014, the court granted Nationstar's motion, largely because Margaret and Theresa's allegations were unclear and their claims were not sufficiently pled.  *See*

5/5/2014 Order, ECF No. 14 at 6-9. The court dismissed their Original Complaint without prejudice and gave them until May 26, 2014 to file an amended one. *Id.* at 9.

Margaret and Theresa filed a First Amended Complaint on May 27, 2014. *See generally* FAC.[4] Their allegations are more clear, and they bring against Nationstar the following four claims: (1) violation of California Civil Code § 2923.6(c) & (d); (2) breach of fiduciary duty; (3) violation of the California Homeowner Bill of Rights; and (4) fraud. *See id.* ¶¶ 18-48.

Nationstar now moves to dismiss Margaret and Theresa's First Amended Complaint. *See* Motion, ECF No. 21. Margaret and Theresa filed an opposition, and Nationstar filed a reply. *See* Opposition, ECF No. 27; Reply, ECF No. 29.

## ANALYSIS

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

---

[4] Plaintiffs filed their First Amended Complaint one day late, but given that they filed it the next day and no one was prejudiced by the delay, the court finds good cause to overlook this fact.

1  enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal
2  citations and parentheticals omitted).

3  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true
4  and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551
5  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

6  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
7  is made "unless it determines that the pleading could not possibly be cured by the allegation of other
8  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc.*
9  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party
10 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*
11 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
12 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
13 with leave to amend).

## II. DISCUSSION

### A. Margaret and Theresa's First Claim for Violation of Cal. Civ. Code § 2923.6(c) & (d)

In their first claim, Margaret and Theresa allege that Nationstar violated Cal. Civ. Code § 2923.6(c) and (d). *See* FAC ¶¶ 18-24.

Cal. Civ. Code § 2923.6(c) and (d) were enacted as part of California's Homeowner Bill of Rights ("HBOR"). Generally speaking, HBOR is a California state law that provides protections for homeowners facing foreclosure and reforms some aspects of the foreclosure process. Its purpose is "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4(a). As for Cal. Civ. Code § 2923.6(c), that section provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

And Cal. Civ. Code § 2923.6(d) provides:

> (d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

Here, Nationstar does not argue that Margaret and Theresa have not sufficiently alleged claims for violations of these provisions. *See generally* Motion, ECF No. 21. Nationstar instead argues that HBOR does not apply to Margaret and Theresa because the Property was not the principal residence of "the borrower." *See id.* at 9-11. Nationstar first points out that Cal. Civ. Code § 2924.15(a) states that HBOR "shall apply only to first lien mortgages or deeds of trust that are secured by <u>owner-occupied</u> residential real property containing no more than four dwelling units." (Emphasis added.) The statute then states that "'owner-occupied' means that the property is <u>the principal residence of the borrower</u> and is security for a loan made for personal, family, or household purposes." (Emphasis added.) Nationstar next points out that the Deed of Trust lists Margaret, Theresa, and Lazarus as "borrower" of the loan. *See* RJN, Ex. A, ECF No. 7-1 at 5. Nationstar then points out that Margaret and Theresa concede in their allegations that only Margaret, and not Theresa and Lazarus, lives at the Property. *See* FAC ¶ 7.

Without citing any caselaw construing the provision or any HBOR-related legislative history, Nationstar argues that, because Cal. Civ. Code § 2924.15(a) says "the borrower," and not "a" or "any borrower," HBOR does not apply where, as here, there are multiple borrowers under a deed of trust but not all of the borrowers live at the property secured by that deed of trust. *See* Motion, ECF No. 21 at 10. Nationstar contends that had the California Legislature meant to cover this situation, it could have done so. *See id.* (citing Cal. Fin. Code § 22327 (using the phrase "any borrower")). It also contends that interpreting Cal. Civ. Code § 2924.15(a) to cover the situation presented here

would lead to absurd results. *See id.* at 10-11. It says, for example, under Cal. Civ. Code § 2923.6, "lenders would be required to review loan modification applications . . . submitted by one borrower on a loan when another borrower may not seek or even consent to modification." *Id.* at 11. It also says that under Cal. Civ. Code § 2923.7, "signatories to a loan who do not live at the property could demand services appoint them single points of contact." *Id.* And it says that under Cal. Civ. Code § 2923.55, "lenders would be forced to determine which of the borrowers on the loan actually live at the property before knowing who to contact prior to recording a default notice." *Id.* "In each of these situations," Nationstar emphasizes, "an absentee signatory on the loan who is merely identified on the deed of trust would be able to sue to stop a foreclosure as long as any one of the signatories resided at the property." *Id.*

The court rejects Nationstar's argument. First, the court does not believe that the statutory language is as clear as Nationstar contends. Second, the court does not believe that the results suggested by Nationstar as absurd, particularly in light of HBOR's purpose. As mentioned above, HBOR was enacted to provide a few protections for homeowners in a state that allows for non-judicial foreclosures. It is meant to ensure that "borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4(a). All of the results suggested by Nationstar coincide with this purpose. It is true that under Cal. Civ. Code § 2923.6 a servicer would have to review a loan modification application that one borrower submits even if other borrowers did not sign on to it. Nothing in HBOR, however, requires a servicer to grant a loan modification in these circumstances. *See* Cal. Civ. Code § 2923.4(a). It also is true that under Cal. Civ. Code § 2923.7 a servicer would have to appoint all borrowers to a loan a single point of contact, but the court does not see why the locations of the borrowers affect this. It also is true that under Cal. Civ. Code § 2923.55 a servicer would have to find out where to send borrowers the required due diligence-related information before filing a notice of default, but this simply is what the statute requires. The statute says nothing about a servicer having to send the information to only one location. In short, the court does not believe that any of this is absurd.

1  To the contrary, the court thinks the results would be absurd if the statute was read as Nationstar
2  urges. For example, under Nationstar's interpretation, the following situation would not be covered
3  by HBOR. Imagine that an elderly man and an elderly woman purchase a small house in Year 1,
4  and both as listed as borrowers on the deed of trust. In Year 2, even though the woman is employed,
5  the man unexpectedly develops dementia and is unable to continue working. With their combined
6  incomes lower than before, the couple falls behind on their mortgage payments. At the same time,
7  the man's dementia becomes so severe that the woman no longer is able to attend to him alone, so he
8  has to live in a nursing home, leaving the woman as the only occupant of the house. In Year 3, the
9  woman applies for a loan modification. The servicer nevertheless files a notice of default without
10 complying with the due diligence requirements of Cal. Civ. Code § 2923.55 and never provides her
11 with a written determination of her loan modification application as required under Cal. Civ. Code §
12 2923.6. Given the purposes of HBOR, did the California Legislature intend for the woman to be
13 excluded from the protections of HBOR? The court thinks the California Legislature did not intend
14 this and that the language of HBOR does not compel such a result, and the court found (and
15 Nationstar cited) no authority suggesting otherwise. Accordingly, the court finds that HBOR applies
16 here and rejects Nationstar's argument that Margaret and Theresa's first claim fails.

**B. Margaret and Theresa's Second Claim for Breach of Fiduciary Duty Claim**

In their second claim, Margaret and Theresa allege that Nationstar breached its fiduciary duty to them. *See* FAC ¶¶ 25-32. More specifically, they allege that Cal. Civ. Code § 2923.7(b)(1) and (4) created a "statutory duty" requiring Nationstar "to provide [them] with information of the foreclosure prevention alternatives offered and how to apply for these alternatives" and to "giv[e] [them] a deadline for submi[tting] any required documents to be considered." *Id.* ¶ 27. They also allege that they complied with all of Nationstar's requests for additional information in support of their pending loan modification but that Nationstar still conducted the foreclosure without ever informing them of a decision about their application. *See id.* ¶ 28-29.

Nationstar argues that it did not owe Margaret and Theresa a fiduciary duty. *See* Motion, ECF No. 11-13. The court agrees. Plaintiffs cite nothing in their First Amended Complaint or opposition to support their claim that Cal. Civ. Code § 2923.7(b)(1) or (4) created a "statutory duty," and they

do not bring a discrete claim for violation of either of those provisions. To the extent that they rely upon *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App.3d 1089, 1095-96 (Cal. Ct. App. 1991) (lenders do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money"), *see* Opposition, ECF No. 27 at 3, that case involved a lender's "duty of due care" for purposes of a negligence claim, not a claim for breach of a fiduciary duty.[5] Accordingly, Margaret and Theresa's second claim is dismissed without prejudice.

### C. Margaret and Theresa's Third Claim for Violation of California Homeowner Bill of Rights

In their third claim, Margaret and Theresa allege that Nationstar violated HBOR. *See* FAC ¶¶ 33-41. They do not allege that Nationstar violated any particular section of the California Civil Code (as they did in their first claim). Instead, they allege that HBOR "created a statutory contract" between Nationstar and themselves. *See id.* ¶ 34. They allege that Nationstar breached this contract when it (1) "filed a notice of foreclosure sale on August 28, 2013," while it was still considering their loan modification application, (2) "conducting the foreclosure 3 days after being faxed the last documents required for the mortgage modification," and (3) "notified [them] more than 2 months after the foreclosure sale that their mortgage modification request had been denied." *Id.* ¶ 36-38.

Their claim fails. First, Margaret and Theresa provide no authority for their allegation that HBOR created a "statutory contract" between anyone, including them and Nationstar. While "statutory contracts" have been found to have been created under California law, it has been only in rare instances and contexts that are not present here. *See Retired Employees Ass'n of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171 (2011); *Cal. Teachers Ass'n v. Cory*, 155 Cal. App. 3d 494 (Cal. Ct. App. 1984); *see also Sonoma County Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109 (2013) (discussing this area of California law). Second, as Nationstar points out, to the extent that Margaret and Theresa are alleging that Nationstar violated Cal. Civ. Code §

---

[5] The court previously has discussed at length a lenders duty of due care for purposes of a negligence claim in *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *14-17 (N.D. Cal. Mar. 3, 2014).

2923.6(c) and (d), which is what it appears they are alleging, they already alleged violations of those particular provisions in their first claim. Third, to the extent that Margaret and Theresa are alleging that Nationstar violated some other statute, their allegations fail to put Nationstar on notice about it and do not state a claim to relief that is plausible on its face. Accordingly, Margaret and Theresa's third claim is dismissed without prejudice.

### D. Margaret and Theresa's Fourth Claim for Fraud

Margaret and Theresa's fourth claim is for fraud. *See* FAC ¶¶ 42-48. They allege that Nationstar "gave [them] the impression that they would comply with [its] statutory duty to review their July 2, 2013 request for [a] mortgage modification in a business[-]like manner," that they "were justified in relying on Nationstar complying" with those duties, and that Nationstar "had no intention of determining whether or not Margaret and Theresa qualified for a mortgage modification." *Id.* ¶¶ 43-45. They then allege that they suffered damages as a result of Nationstar's fraudulent conduct. *Id.* ¶¶ 46-47.

Nationstar argues that Margaret and Theresa do not identify any specific misrepresentation that it made and do not allege sufficient facts to support their justifiable reliance on any misrepresentation. *See* Motion, ECF No. 21 at 15-16. The court agrees. Under Federal Rule of Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). Margaret and Theresa's general allegations (quoted above) do not satisfy this heightened pleading requirement. They do not state any specific misrepresentation. They contend that Nationstar was required to take or not take certain action

under HBOR, but they do not allege that Nationstar ever told them anything.  They also conclusorily allege that they justifiably relied upon Nationstar's obligation to comply with HBOR, but they do not allege facts to show why their reliance was justified.  Rather than alleging a claim for fraud, it sounds like they again allege a claim for violation of some of HBOR's provisions, which of course they already did in their first claim.  Accordingly, Margaret and Theresa's fourth claim is dismissed without prejudice.

## CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Nationstar's motion.  Margaret and Theresa's second, third, and fourth claims are dismissed without prejudice.  Margaret and Theresa may file a Second Amended Complaint no later than August 15, 2014.  If they choose not to do so, Nationstar shall answer their First Amended Complaint no later than August 29, 2014.  *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: August 1, 2014

_____
LAUREL BEELER
United States Magistrate Judge