UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| THERESA AGBOWO, et al.,<br><br>                    Plaintiffs,<br>     v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>                    Defendant.<br>_____/ | No. C 14-01295 LB<br><br>**ORDER GRANTING NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Re: ECF No. 67] |

## INTRODUCTION

Plaintiffs Theresa Agbowo and Margaret Agbowo sued Nationstar Mortgage LLC ("Nationstar") and Does 1-100 in Alameda County Superior Court for claims related to Nationstar's failure to provide them with a loan modification and subsequent foreclosure upon their property. (*See* Notice of Removal, Ex. A ("Complaint"), ECF No. 1 at 14-20.[1]) Nationstar removed the action to this court and now moves to dismiss Plaintiffs' Second Amended Complaint. (*See* Notice of Removal, ECF No. 1; Second Amended Complaint ("SAC"), ECF No. 56; Motion, ECF No. 67.) Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable to be determined without oral argument and vacates the February 19, 2015 hearing. Upon consideration of the allegations in the Second Amended Complaint, the facts subject to judicial notice, the papers submitted, and the applicable legal authority, the court grants Nationstar's motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**STATEMENT**

**I. THE FORECLOSURE UPON THE AGBOWOS' PROPERTY**

In 2006, Lazarus's and Theresa's daughter, Margaret, wished to purchase a home. (SAC ¶ 7.) After discussing the matter with her parents, they decided to purchase the property at 850 53rd Street, Oakland, California, 94608 (the "Property"). (*Id.*) To purchase it, on September 6, 2006 or September 7, 2006, the Agbowos[2]—Lazarus, Theresa, and Margaret—executed a promissory note and borrowed $417,000 from Home Loan Specialists, Inc. (*See id.*; Request for Judicial Notice ("RJN"), Ex. A ("Deed of Trust"), ECF No. 7-1 at 5-30.[3]) The loan was secured by the Property. (SAC ¶ 7; Deed of Trust, ECF No. 7-1.) Shortly thereafter, the Agbowos remodeled the Property, and Margaret has lived in it since then. (SAC ¶ 7.)

Sometime between 2006 and 2009 the deed of trust was transferred from Home Loan Specialists to Aurora Loan Services. (*Id.* ¶ 8.) In 2009, Margaret and Theresa applied to Aurora Loan Services

---

[2] For clarity's sake, the court notes that "the Agbowos" include Lazarus, Theresa, and Margaret, while "Plaintiffs" include only Theresa and Margaret. Lazarus is not a party to this action.

[3] The court previously took judicial notice of the following documents: (1) a Deed of Trust, dated September 7, 2006, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2006357025 on September 21, 2006; (2) a Notice of Default, dated November 5, 2010 and which relates to Plaintiffs' 2006 loan, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2010332006 on November 10, 2010; (3) a Voluntary Petition filed by Margaret Ogbowo on March 11, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (4) a Summary of Schedules filed by Margaret Ogbowo on April 8, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (5) a Notice of Trustee's Sale, dated November 6, 2012 that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2012376928 on November 8, 2012; (6) a Notice of Trustee's Sale, dated April 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013150789 on April 30, 2013; (7) a Notice of Trustee's Sale, dated August 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013291912 on August 28, 2013; (8) a Trustee's Deed Upon Sale, dated September 30, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013326911 on October 8, 2013; and (9) a Quitclaim Deed, dated December 3, 2013, that was recorded in the Alameda County Recorder's Office as document number 2013389679 on December 23, 2013. *See* Request for Judicial Notice ("RJN"), Exs. A-I, ECF No. 7-1; 5/5/2014 Order, ECF No. 14 at 2 n.3.

for a loan modification. (*Id.* ¶ 9.) Aurora "gave them monthly trial payments, which [they] faithfully made . . . ." (*Id.*) (Margaret and Theresa do not allege whether the loan modification then was granted on not. (*See generally id.*)) "After the trial payment plan was completed the deed of trust and [promissory n]ote was transferred to Nationstar." (*Id.* ¶ 9.)

"After the loan was transferred to Nationstar, Margaret and Theresa applied for [a] loan modification with Nationstar." (*Id.* ¶ 10.) "Margaret and Theresa provided Nationstar with all documents requested." (*Id.*)

On November 10, 2010, "[w]hile the loan modification was pending[] with Nationstar," Quality Loan Service Corporation ("Quality Loan"), as the agent for Nationstar, recorded a Notice of Default stating that the Agbowos were $27,019.50 in arrears on the loan as of November 5, 2010. (*Id.* ¶ 11; RJN, Ex. B ("Notice of Default"), ECF No. 7-2 at 2-6.)

To stave off a foreclosure, Margaret filed for bankruptcy on March 11, 2011. (SAC ¶ 11.) She dismissed the bankruptcy action in 2012. (*Id.*)

In July or August 2012[4], Margaret and Theresa applied again to Nationstar for loan modification. (*Id.* ¶ 12.) They hired Hyatt Brokers Associate ("Hyatt") to help them with the process. *Id.* Hyatt faxed a "third party authorization" to Nationstar on August 30, 2012. (*Id.*)

"Thereafter Nationstar requested additional information which was provided promptly after each request." (*Id.* ¶ 13.) On October 10, 2012, Margaret and Theresa (through Hyatt) supplied Nationstar with additional information in support of their loan modification application. (*Id.*, Ex. A, ECF No. 56-1 at 3.)

On November 8, 2012, Quality Loan recorded a Notice of Trustee's Sale stating that the Agbowos were in default and that a trustee's sale would take place on December 5, 2012. (*Id.* ¶ 11; RJN, Ex. E ("First Notice of Trustee's Sale"), ECF No. 7-2 at 47-48.)

This trustee's sale did not occur. (*See* SAC ¶ 11.) Instead, on November 16, 2012, November

---

[4] Plaintiffs' Second Amended Complaint says that Margaret and Theresa applied to Nationstar for a loan modification in July or August 2009, but this does not make sense in light of the timeline presented. Given the other numerous typographical and grammatical errors in the Second Amended Complaint, the court assumes that Plaintiffs meant to say that they applied for a loan modification in July or August 2012.

19, 2012, December 13, 2012, December 19, 2012, January 3, 2013, January 29, 2013, February 8, 2013, and March 21, 2013, Margaret and Theresa (again through Hyatt) responded to Nationstar's repeated requests for additional information in support of their loan modification application. (*Id.* ¶¶ 13-14 & Ex. 1, ECF No. 56-1 at 4-11.)

On April 30, 2013, Quality Loan recorded a second Notice of Trustee's Sale. (*Id.* ¶ 11; RJN, Ex. F ("Second Notice of Trustee's Sale"), ECF No. 7-2 at 50-51.) This time, the trustee's sale was scheduled to take place on May 28, 2013. (RJN, Ex. F, ECF No. 7-2 at 50-51.)

This trustee's sale did not take place, either. (*See* SAC ¶ 11.) Instead, on May 13, 2013, June 4, 2013, and July 12, 2013, Margaret and Theresa again (through Hyatt) responded to Nationstar's requests for additional information in support of their loan modification application. (*Id.* ¶¶ 13-15 & Ex. 1, ECF No. 56-1 at 12-14.) In July 2013, "Hyatt contacted Nationstar['s] loan modification department and verified that [it] had received all the requested documents." (*Id.* ¶ 15.) On July 25, 2013, "Nationstar notified Margaret and Theresa that their loan modification request was denied." (*Id.*[5])

The next day, on July 26, 2013, Margaret and Theresa submitted a new loan modification request to Nationstar. (*Id.* ¶ 16 & Ex. 1, ECF No. 56-1 at 15-20.) On July 30, 2013 and August 22, 2013, Margaret and Theresa again (through Hyatt) responded to Nationstar's requests for additional information in support of their loan modification application. (*Id.* ¶ 16 & Ex. 1, ECF No. 56-1 at 21-22.)

On August 28, 2013 Quality Loan recorded a third Notice of Trustee's Sale. (*Id.* ¶¶ 11, 16; RJN, Ex. G ("Third Notice of Trustee's Sale"), ECF No. 7-2 at 53-54.) The trustee's sale was scheduled to take place on September 26, 2013. (SAC ¶ 16; RJN, Ex. G, ECF No. 7-2 at 53-54.) Margaret and Theresa (through Hyatt) continued to provide Nationstar with additional information in support of their pending loan modification application. (SAC ¶ 16.) They did so on September 5, 2013, September 11, 2013, September 20, 2013, and September 23, 2013. (*Id.* ¶ 16 & Ex. 1, ECF No. 56-1

---

[5] This allegation is new to Plaintiffs' Second Amended Complaint. In their previous complaints, Plaintiffs did not allege that Nationstar actually denied one of their loan modification requests.

1   at 31-34.)

2   Despite Margaret and Theresa continually supplying Nationstar with additional information in
3   support of their pending loan modification application, the trustee's sale took place on September
4   26, 2013. (*Id.* ¶ 16; RJN, Ex. H ("Trustee's Deed Upon Sale"), ECF No. 7-2 at 56-57.) Nationstar
5   purchased the Property for $424,037.53. (SAC ¶ 16; Trustee's Deed Upon Sale, ECF No. 7-2 at 56-
6   57.)

7   On December 3, 2013, Nationstar transferred the Property to Jorge Lasada through a Quitclaim
8   Deed. (SAC ¶ 16.)

9   Margaret and Theresa did not learn that the trustee's sale actually had occurred until December
10  3, 2013, when an attorney for Nationstar served them with a three-day Notice to Quit the Property.
11  (*Id.* ¶ 17.) The attorney was told that Margaret and Theresa's loan modification application was still
12  pending and was told of the dates on which they submitted additional information to Nationstar.
13  (*Id.*) After this, Nationstar apparently took no further action to evict Margaret and Theresa from the
14  Property. (*Id.*)

15  By letter dated December 3, 2013 (more than two months after the Property was sold at the
16  trustee's sale), Nationstar notified Margaret and Theresa that their loan modification application was
17  denied. (*Id.* ¶ 18 & Ex. B, ECF No. 56-1 at 2.) The letter, which contains numerous errors, states in
18  relevant part:

19   Dear Hyatt N. Agbowo:

20   Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence, received
     November 15 2013 - regarding your notification of representation of the
21   aforementioned borrowers, and submission of modification related documentation for
     the above referenced account. We appreciate you bringing this to our attention, as we
22   take all such matters seriously.

23   Ater review of the account, it was confirmed that it was stated the property was
     previously Owner Occupied only by Margaret Agbowo and not Theresa Agbowo.
24   However, per documentation provided, it was confirmed that a different property
     address of 890 Street was listed in lieu of [850 53rd Street, Oakland, California
25   94608]. Because we were unable to validate occupancy, we could not move forward
     with the modification review in order to postpone the Foreclosure sale that did take
26   place. As of the date of this correspondence, the property is now reflecting as Real
     Estate Owner (REO) status. If you or your client have any additional questions, you
27   may contact the REO Department directly using the information provided below:

28   REO Department:
     Phone: 1,888-708,4043

C 14-01295 LB
ORDER                        5

> At Nationsiar, customer concerns are important to us.  Should you have any general questions other than those referenced in your correspondence, please contact:
>
> CustQrnr. Service Department
> Monday through Thursday. 8 a.m., to 8 p.m. CDT
> Friday.  8 am, to 6p.m. CDT
> Saturday,8 a.m. to 2p.m. CDT
> Toll-free number: 1.888-480,2432

(*Id.*, Ex. B, ECF No. 56-1 at 2 (errors in original).)  The letter does not inform Margaret and Theresa about their right to appeal the denial of their loan modification application.  (*Id.* ¶ 19; *see id.* Ex. B, ECF No. 56-1 at 2.)

## II. THE INSTANT ACTION

Plaintiffs filed their Complaint against Nationwide and Does 1-100 in Alameda County Superior Court on February 4, 2014.  (Complaint, ECF No. 1 at 14-20.)  They brought claims for (1) "bad faith consideration of mortgage modification"; (2) breach of "CC § 2923.6(c) and (d)" (by which they presumably referred to "California Civil Code" §§ 2923.6(c) and (d)); and (3) fraud.  (*Id.* ¶¶ 8-33.)  Essentially, they alleged that Nationwide did not review and consider their loan modification application in good faith and violated certain statutory foreclosure-related requirements.  (*See id.* ¶¶ 8, 18, 26, 30.)

On March 27, 2014, Nationwide filed a motion to dismiss Plaintiffs' Complaint.  (Motion, ECF No. 7.)  On May 5, 2014, the court granted Nationstar's motion, largely because Plaintiffs' allegations were unclear and their claims were not sufficiently pled.  (*See* 5/5/2014 Order, ECF No. 14 at 6-9.)  The court dismissed their Complaint without prejudice and gave them until May 26, 2014 to file an amended one.  (*Id.* at 9.)

Plaintiffs filed a First Amended Complaint on May 27, 2014.  (*See* First Amended Complaint ("FAC"), ECF No. 16.[6])  Their allegations were clearer, and they brought against Nationstar the following four claims: (1) violation of California Civil Code § 2923.6(c) & (d); (2) breach of fiduciary duty; (3) violation of the California Homeowner Bill of Rights; and (4) fraud.  (*See id.* ¶¶ 18-48.)

---

[6] Plaintiffs filed their First Amended Complaint one day late, but given that they filed it the next day and no one was prejudiced by the delay, the court found good cause to overlook this fact.

Nationstar moved to dismiss all four claims, and on August 1, 2014 the court dismissed without prejudice Plaintiffs' second, third, and fourth claims, but ruled that Plaintiffs' first claim survived. (8/1/2014 Order, ECF No. 30.)  Rather than filing a second amended complaint at that time, Plaintiffs stood on their narrowed First Amended Complaint, so Nationstar answered the First Amended Complaint on September 5, 2014.  (Answer, ECF No. 32.)

On November 11, 2014, Plaintiffs moved for permission to file a second amended complaint. (Motion, ECF No. 50.)  On December 15, 2014, the court granted Plaintiffs' motion, and on December 18, 2014 Plaintiffs filed their Second Amended Complaint.  (12/15/2014 Order, ECF No. 55; SAC, ECF No. 56.)  In it, they re-allege their first claim for violation of California Civil Code § 2923.6(c) & (d), and they allege new two new claims: one for violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*, and one for fraud.  (*See* SAC ¶¶ 20-41.)

Nationstar now moves to dismiss Plaintiffs' Second Amended Complaint.  (Motion, ECF No. 67.)  Plaintiffs filed an opposition, and Nationstar filed a reply.  (Opposition, ECF No. 70; Reply, ECF No. 72.)

## ANALYSIS

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

### A. Plaintiffs' First Claim for Violation of Cal. Civ. Code § 2923.6(c) & (d) Is Dismissed Without Prejudice

In their first claim, Plaintiffs again allege that Nationstar violated Cal. Civ. Code § 2923.6(c) and (d). (*See* SAC ¶¶ 20-26.) As the court explained in previous orders, Cal. Civ. Code § 2923.6(c) and (d) were enacted as part of California's Homeowner Bill of Rights ("HBOR"). Generally speaking, HBOR is a California state law that provides protections for homeowners facing foreclosure and reforms some aspects of the foreclosure process. Its purpose is "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code §

2923.4(a). As for Cal. Civ. Code § 2923.6(c), that section provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

And Cal. Civ. Code § 2923.6(d) provides:

> (d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

Here, Nationstar argues that Plaintiffs cannot state a claim under HBOR in light of their new allegations that in July 2013, "Hyatt contacted Nationstar['s] loan modification department and verified that [it] had received all the requested documents," and that on July 25, 2013, "Nationstar notified Margaret and Theresa that their loan modification request was denied." (SAC ¶ 15.) In so arguing, Nationstar points to another HBOR provision, Cal. Civ. Code § 2923.6(g), which provides as follows:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Nationstar says that because it evaluated the loan modification application that Plaintiffs submitted in July or August 2012 and denied that application, Plaintiffs cannot now avail themselves of HBOR's protections with respect to conduct surrounding Plaintiffs' July 26, 2013 loan modification

application.

Upon review of the relevant authority, the court is not convinced that Plaintiffs' HBOR claim fails as a matter of law. To be sure, Nationstar does cite authority holding that a plaintiff's HBOR claim fails where the plaintiff alleged or conceded that the defendant had denied the plaintiff's pre-2013 loan modification application. *See Penaloza v. Select Portfolio Servicing Inc.*, No. CV 14-02571-AB (PJWx), 2014 WL 6910334, at *10 (C.D. Cal. Dec. 8, 2014) ("Reviewing the history of allegations under § 2[9]23.6, Plaintiff's claims clearly state that she has previously applied for and been denied a loan modification application. Thus, under § 2923.6, SPS is not obliged to evaluate Plaintiff's later loan modification applications unless Plaintiff had shown there was a material change to her financial situation since the date of her previous applications.") (citations omitted); *Dias v. JP Morgan Chase, N.A.*, Case No.: 5:13-CV-05327-EJD, 2014 WL 2890255, at *3-4 (N.D. Cal. June 25, 2014) ("However, Plaintiffs also allege that they submitted completed loan modification applications between July 2012 and November 2012. Thus, under § 2923.6(g), Chase, the alleged mortgage servicer, was not obligated to evaluate the June 2013 loan modification application because Plaintiffs had already been evaluated for a loan modification prior to January 1, 2013."); *see also Andre v. Bank of Am.*, N.A., Case No. 5:14-cv-02888-PSG, 2014 WL 6895240, at *4 (N.D. Cal. Dec. 5, 2014) (finding that the plaintiff's claim failed under § 2623.6(g) where the plaintiff's pre-2013 loan modification applications had been denied for procedural reasons—incomplete paperwork, inability to verify the plaintiff's identity, among others); *Rockridge Trust v. Wells Fargo NA*, Case No. 13-cv-01457-JCS, 2014 WL 688124, at *21 (N.D. Cal. Feb. 19, 2014) (finding that § 2923.6(g) applied where the plaintiffs conceded in their second amended complaint that they had previously been evaluated for a loan modification prior to January 1, 2013). None of these opinions, though, examine § 2923.6(g) in any detail; rather, each decision appears to assume that a defendant's denial of pre-2013 loan modification application—regardless of the circumstances or the reason for denial—triggers the subsection.

The court does not believe that the application of § 2923.6(g) is so simple. It does not appear that any California appellate courts have considered the issue, and the only court in this district actually to have considered it in detail did not find that a denial of a pre-2013 loan modification

application automatically triggers § 2923.6(g). *See Johnson v. Bank of Am., N.A.*, Case No. 14-cv-05053-JSC, 2015 WL 351210, at *4-5 (N.D. Cal. Jan. 23, 2015). In *Johnson*, the plaintiff alleged that she applied for a loan modification application prior to 2013, that the defendant repeatedly told the plaintiff to submit additional documents, that the plaintiff did so, that the defendant eventually told the plaintiff that the loan modification was complete, and that the defendant thereafter denied the application because not all of the required documents had been submitted. *See id.* at *1, 4. The defendant argued that its denial of the plaintiff's pre-2013 loan modification application meant, under § 2923.6(g), that it was not obligated to comply with HBOR with respect to the plaintiff's later loan modification applications. *See id.* at *3-4.

The court rejected the defendant's argument and determined that, based on the plaintiff's allegations, it could not conclude as a matter of law that § 2923.6(g) applied and thus denied the defendant's motion to dismiss on this ground. The court explained:

> Plaintiff, for her part, contends that because the denial was not on the merits, but rather because Defendant contended she had not submitted the necessary documents, such a denial cannot constitute a good faith evaluation of Plaintiff's loan application. Defendant correctly points out that nothing in the language of the statute requires the prior denial to be "on the merits" or a "good faith evaluation." The provision, however, is limited to borrowers "who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification." Cal. Civ. Code § 2923.6(g). Neither party has submitted any case law interpreting what it means to be "evaluated" or "afforded a fair opportunity to be evaluated." The legislative history for the HBOR states that one purpose of the amendments "is to ensure that, as part of the non-judicial process, borrowers have a meaningful opportunity to obtain available loss mitigation options . . . ." Sen. Floor Analysis of Assemb. Bill No. 278 ("AB 278 Analysis"), Conf. Rep. No. 1, Reg. Sess., at 27 (Cal. July 2, 2012). Thus, "[b]orrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted." *Id.* at 3.
>
> The Court cannot conclude as a matter of law that Plaintiff's application was evaluated or that she was afforded a fair opportunity to be evaluated. First, Plaintiff has not alleged that her application was actually evaluated; to the contrary, Defendant denied her application for failing to submit documents, not because upon evaluation Defendant concluded that she did not qualify for a loan modification. Second, drawing all reasonable inferences in Plaintiff's favor, Plaintiff was also not afforded a fair opportunity to be evaluated. Her application was denied for failing to submit documents that she did in fact submit and, in any event, were requested after Defendant had already advised her that her application was complete (that is no more documents were required). Such circumstances are not a fair opportunity to be evaluated.
>
> Defendant laments that such a holding will increase the risk "of borrowers submitting multiple applications for first lien loan modification for the purpose of delay," Cal. Civ. Code § 2923.6, a risk the legislature specifically sought to avoid or

> at least mitigate. The Court disagrees. While such intentional delay might result where the borrower fails to submit the requested documents, the allegation here is that the borrower did submit the requested documents and the Court's holding is limited to the circumstances alleged in the Complaint. Accordingly, Defendant's motion to dismiss Plaintiff's claim under Section 2923.6 is denied.

*Id.* at *4-5.

The court finds the reasoning of *Johnson* to be persuasive and adopts it here. That said, while Plaintiffs allege in their Second Amended Complaint that they applied for a loan modification application before 2013, that Nationstar repeatedly told them to submit additional documents, that they did so, that Nationstar eventually told them that it had received all requested documents, and that Nationstar thereafter denied the application, Plaintiffs here—unlike the plaintiff in *Johnson*—never allege that Nationstar denied the application because Plaintiffs failed to submit all requested documents. Plaintiffs say in their opposition that this was why Nationstar denied the application, but such an allegation does not appear in the Second Amended Complaint. (*See* SAC ¶ 15.) Accordingly, in light of Johnson's narrow holding and Plaintiffs' apparent ability to allege that Nationstar denied their pre-2013 loan modification application was because Plaintiffs did not submit all requested documents, the court dismisses without prejudice Plaintiffs' HBOR claim.

**B. Plaintiffs' Second Claim for Violation of the Rosenthal Fair Debt Collection Practices Act Is Dismissed Without Prejudice**

For their second claim, Plaintiffs allege that Nationstar violated the Rosenthal Fair Debt Collection Practices Act "by providing false and misleading information to Margaret and Theresa," namely, "that the loan modification process would prevent the foreclosure process from being completed." (SAC ¶ 28.) Nationstar's "loan modification department gave this impression by continuing to request additional information" from Plaintiffs. (*Id.*)

Nationstar first argues that it is not clear from the Second Amended Complaint whether Plaintiffs allege a claim under the RFDCPA (a state law) or the Fair Debt Collection Practices Act ("FDCPA") (a federal law). The court finds Nationstar's confusion to be without merit. In their motion for leave to file a second amended complaint, Plaintiffs stated they wanted to allege a claim under the RFDCPA. (*See* Motion, ECF No. 50 at 1.) The court's order granting Plaintiffs' motion considered the parties' arguments about whether to allow a claim under the RFDCPA. (*See*

12/15/2014 Order, ECF No. 55 at 3-4.) And while the claim in the Second Amended Complaint is titled as one for violation of the "Fair Debt Collection Practices Act" (sans Rosenthal), two of the paragraphs in which the claim is alleged explicitly refer to the RFDCPA. (*See* SAC ¶¶ 28-29.)

The real problem, also highlighted by Nationstar, is that Plaintiffs do not allege which provision of the RFDCPA they believe Nationstar violated. Plaintiffs allege that this conduct violates Cal. Civ. Code § 2923.7(b)(1) and Cal. Civ. Code § 2923.7(b)(4), but neither of those provisions are within the RFDCPA. The RFDCPA is found at Cal. Civ. Code § 1788 *et seq.*, not Cal. Civ. Code § 2923.7; Cal. Civ. Code § 2923.7 is part of HBOR. For this reason alone, Plaintiffs' claim fails. It does not put Nationstar on "fair notice" of the claim against it. The court will dismiss it without prejudice.

Even so, Nationstar also argues that the RFDCPA does not apply because it has not engaged in "debt collection."[7] Nationstar cites several opinions holding that the mere allegation that a defendant foreclosed on a deed of trust is not sufficient to state a claim under the RFDCPA. *See*, *e.g.*, *Gamboa v. Trustee Corps.*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDC[P]A. Therefore, as the trustee under the Deed of Trust with the power to sell the foreclosed property, Trustee Corps cannot have violated the RFDCPA and the FDC[P]A."); *Putkkuri v. Recontrust Co.*, No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) ("The Complaint fails to state a claim under the FDCPA or the RFDCPA because Plaintiff challenges the lawfulness of foreclosure proceedings on her home pursuant to a deed of trust; Plaintiff does not allege that Defendants were debt collectors, collecting a debt within the meaning of the FDCPA or the RFDCPA.").

The RFDCPA, however, incorporates provisions of the FDCPA, *see* Cal. Civ. Code § 1788.17

---

[7] Under the RFDCPA, "debt collection" is defined as "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b). A "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). And "debt" is defined as "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d).

C 14-01295 LB
ORDER                                                13

("every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. §§] 1692b to 1692j"), and "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process," federal courts have held that "a remedy may be available under the FDCPA," *Lohse v. Nationstar Mortg.*, Case No. 14-cv-00514-JCS, 2014 WL 535896, at *9 (N.D. Cal. Oct. 20, 2014) (citing *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (finding that allegedly deceptive statements in an offer letter related to a forbearance agreement were sufficient to state a claim under the FDCPA)). *See also Boessenecker v. JPMorgan Chase Bank*, No. C 13-491 MMC, 2013 WL 3856242, at *5 (N.D. Cal. July 24, 2013) ("The issue in *Gamboa*, however, was whether a claim under the RFDCPA can be based on a foreclosure. Here, by contrast, plaintiffs' claim is based on conduct other than a foreclosure, and, consequently, defendant's reliance on *Gamboa* is unavailing.") (citations omitted); *Walters v. Fid. Mortgage of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (allegations that defendant engaged in pattern of improper conduct in course of servicing a loan are sufficient to plead debt collection under the RFDCPA). Here, Plaintiffs' seem to be alleging that it was Nationstar's actions with respect to Plaintiffs' loan modification applications, *see* SAC ¶¶ 27-36, rather than or in addition to Nationstar's foreclosure-related actions, that violated the RFDCPA. To the extent that Plaintiffs allege that (or can allege that in a third amended complaint), the court rejects Nationstar's argument.

**C. Plaintiffs' Third Claim for Fraud Is Dismissed With Prejudice**

Plaintiffs' third claim is for fraud. (*See* SAC ¶¶ 37-41.) They allege that Nationstar's "acceptance of the loan modification application submitted by Margaret and Theresa on July 27, 2013 was essentially a promise . . . [to] take no further action to foreclose until the loan modification [application] was processed." (*Id.* ¶ 38.) They further allege that "[t]he loan modification department by requesting additional information led Margaret and Theresa to reasonably believe that the foreclosure sale date would once again be continued as required by" HBOR. (*Id.* ¶ 39.)

As it successfully did with respect to prior iterations of Plaintiffs' fraud claim, Nationstar argues

1  that Plaintiffs do not identify any specific misrepresentation that it made.[8] Under Federal Rule of
2  Civil Procedure 9(b), a party alleging fraud or intentional misrepresentation must satisfy a
3  heightened pleading standard by stating with particularity the circumstances constituting fraud. Fed.
4  R. Civ. P. 9(b). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when,
5  where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106
6  (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth
7  more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is
8  false or misleading about a statement, and why it is false." *Id*. (quoting *Decker v. GlenFed, Inc.*, 42
9  F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)).

Plaintiffs allegations do not satisfy this heightened pleading requirement. Once again, they do not state any specific misrepresentation. They do not allege that Nationstar ever told them that it would not foreclose upon the Property while Plaintiffs' loan modification application was pending. (*See generally* SAC.) In their opposition, Plaintiffs say that "[Nationstar] did no[t] disclose to [them] that the foreclosure was not being delayed by the review of" their loan modification application, Opposition, ECF No. 70 at 7, but this argument—that Nationstar should have told Plaintiffs that it would not delay any foreclosure-related actions—is not a misrepresentation, and Plaintiffs do not show that it is a material omission that Nationstar had a duty to disclose. Their claim fails.

Plaintiffs have had multiple opportunities to allege a specific misrepresentation that Nationstar made but they have not been able to do so. Accordingly, Plaintiffs' fraud claim is dismissed with prejudice.

## CONCLUSION

Based on the foregoing, the court grants Nationstar's motion. Plaintiffs' first and second claims are dismissed without prejudice and their third claim is dismissed with prejudice. Plaintiffs may file a Third Amended Complaint no later than February 26, 2015. If they choose not to do so, Nationstar

---

[8] Nationstar once again argues that Plaintiffs also do no sufficiently allege that they justifiably relied upon any misrepresentation. In light of the court's dismissal of the claim with prejudice because Plaintiffs fail to allege a misrepresentation, the court does not address this argument.

1  shall answer their Second Amended Complaint no later than March 12, 2015. *See* Fed. R. Civ. P.
2  12(a)(4)(A).
3  **IT IS SO ORDERED.**
4  Dated: February 12, 2015

_____
LAUREL BEELER
United States Magistrate Judge