UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| THERESA AGBOWO, et al., | No. C 14-01295 LB |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART NATIONSTAR'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT** |
| v. | |
| NATIONSTAR MORTGAGE LLC, | |
| Defendant. | [Re: ECF No. 80] |

# INTRODUCTION

Plaintiffs Theresa Agbowo and Margaret Agbowo sued Nationstar Mortgage LLC ("Nationstar") and Does 1-100 in Alameda County Superior Court for claims related to Nationstar's failure to provide them with a loan modification and subsequent foreclosure upon their property. (*See* Notice of Removal, Ex. A ("Complaint"), ECF No. 1 at 14-20.[1]) Nationstar removed the action to this court and now moves to dismiss Plaintiffs' Third Amended Complaint. (*See* Notice of Removal, ECF No. 1; Third Amended Complaint ("TAC"), ECF No. 76; Motion, ECF No. 80.) Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable to be determined without oral argument and vacates the April 16, 2015 hearing. Upon consideration of the allegations in the Third Amended Complaint, the facts subject to judicial notice, the papers submitted, and the applicable legal authority, the court grants in part and denies in part Nationstar's motion.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

C 14-01295 LB
ORDER

**STATEMENT**

**I. THE FORECLOSURE UPON THE AGBOWOS' PROPERTY**

On September 7, 2006, Plaintiffs executed a promissory note and borrowed $417,000 from Home Loan Specialists, Inc. to purchase property at 850 53rd Street, Oakland, California, 94608 (the "Property").[2] (*See* TAC ¶ 8, Ex. A ("Promissory Note"), ECF Nos. 77 & 77-1; Request for Judicial Notice ("RJN"), Ex. A ("Deed of Trust"), ECF No. 7-1 at 5-30.[3]) The loan was secured by the Property. (TAC ¶ 8; Deed of Trust, ECF No. 7-1.) Shortly thereafter, Plaintiffs remodeled the Property, and it has been Margaret's principal residence since 2008. (TAC ¶ 8.)

Sometime between 2006 and 2009 the deed of trust was transferred from Home Loan Specialists to Aurora Loan Services. (*See id.* ¶ 9.) As a result of this, Plaintiffs failed to timely pay the taxes owed on the Property. (*Id.*) Aurora Loan Services demanded that the taxes be paid in a single payment, but Plaintiffs could not afford to do that. (*Id.*) Aurora Loan Services then refused to

---

[2] According to Plaintiffs, the Property is a duplex, and although it is a single building, it has two addresses— 850 53rd Street, Oakland, California, 94608, and 5301 Genoa Street, Oakland, California, 94608—one for the upstairs unit and one for the downstairs unit. (TAC ¶ 8.) The promissory note lists only the 850 53rd Street address on it.

[3] The court previously took judicial notice of the following documents: (1) a Deed of Trust, dated September 7, 2006, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2006357025 on September 21, 2006; (2) a Notice of Default, dated November 5, 2010 and which relates to Plaintiffs' 2006 loan, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2010332006 on November 10, 2010; (3) a Voluntary Petition filed by Margaret Ogbowo on March 11, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (4) a Summary of Schedules filed by Margaret Ogbowo on April 8, 2011 in a bankruptcy action filed in the United States Bankruptcy Court for the Northern District of California; (5) a Notice of Trustee's Sale, dated November 6, 2012 that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2012376928 on November 8, 2012; (6) a Notice of Trustee's Sale, dated April 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013150789 on April 30, 2013; (7) a Notice of Trustee's Sale, dated August 26, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013291912 on August 28, 2013; (8) a Trustee's Deed Upon Sale, dated September 30, 2013, that was recorded in the Official Records of the Alameda County Recorder's Office as document number 2013326911 on October 8, 2013; and (9) a Quitclaim Deed, dated December 3, 2013, that was recorded in the Alameda County Recorder's Office as document number 2013389679 on December 23, 2013. (*See* Request for Judicial Notice ("RJN"), Exs. A-I, ECF No. 7-1; 5/5/2014 Order, ECF No. 14 at 2 n.3.)

1  accept Plaintiffs' monthly mortgage payments until they also paid the taxes in a single payment.
2  (*Id.*)

3  So, in November 2009, Plaintiffs applied to Aurora Loan Services for a loan modification. (*Id.* ¶
4  10.) Aurora reviewed their request and offered them a trial payment plan. (*Id.*) After they
5  completed the trial payment plan, Aurora Loan Services neither offered nor denied them a
6  permanent loan modification, and the promissory note and the deed of trust were transferred to
7  Nationstar. (*Id.*)

8  To stave off a foreclosure, Margaret filed for bankruptcy on March 11, 2011. (*Id.* ¶ 11.) After
9  being informed that the bankruptcy action would accomplish its purpose, she dismissed the it in June
10 2012. (*Id.*)

11 On August 30, 2012, Plaintiffs applied to Nationstar for loan modification. (*Id.* ¶ 12, Ex. B
12 ("August 2012 Request"), ECF No. 78.) They hired Hyatt Brokers Associate ("Hyatt") to help them
13 with the process. (*Id.* ¶ 12.) Hyatt faxed a "third party authorization" to Nationstar on August 30,
14 2012. (*Id.*) The "complete package" for their loan modification application was faxed to Nationstar
15 on October 10, 2012. (*Id.* ¶ 12, Ex. C ("October 10 fax cover sheet"), ECF No. 78-1.)

16 From November 2012 to July 25, 2013, "Nationstar submitted 11 requests for additional
17 information," much of which had already been submitted several times. (*Id.* ¶ 13, Exs. D (fax cover
18 sheets listing the documents submitted to Nationstar), E (chart summarizing the documents
19 submitted to Nationstar), ECF Nos. 78-2 & 79.) Plaintiffs "responded to each of these demands."
20 (*Id.*)

21 In July 2013, Hyatt called Nationstar's mortgage modification center. (*Id.* ¶ 14.) "[A]fter a
22 lengthy time of the telephone," Hyatt "was able to get the person [it had been] working with to find
23 all the required documents." (*Id.*) "This person . . . stated that with all the required documents
24 there, [Plaintiffs'] request for [a] mortgage modification was being sent to the underwriter." (*Id.*; *see*
25 *also id.* ¶ 37 ("After a lengthy telephone conference, Hyatt was told that all of the required
26 documents were in the file, for the mortgage modification.").)

27 Nevertheless, by letter dated July 25, 2013, Nationstar notified Plaintiffs that their loan
28 modification request was denied due to a lack of providing all of the required documents. (*Id.* ¶ 14,

C 14-01295 LB
ORDER                                         3

1 Ex. F (July 25 denial), ECF No. 79-1 (telling Plaintiffs that they can call Nationstar about "the
2 reason for non-approval for a HAMP modification" and "the reason for the denial of your request,"
3 mentioning other alternatives, and stating, "We are unable to offer you a Home Affordable
4 Modification because you did not provide us with the documents we requested. Two notices which
5 listed the specific documents we needed and the time frames required to provide them have been
6 sent to you."). And "Nationstar's letter . . . merely state[s] that [P]laintiffs could call a telephone
7 number to discuss the reason for the denial." (*Id.* ¶ 15.) "This statement does not explain [their]
8 right to contest the denial and have an opportunity to present their position and have the denial fully
9 reviewed." (*Id.*)

10 A few days later, on July 30, 2013, Hyatt, on behalf of Plaintiffs, faxed another loan
11 modification application to Nationstar. (*Id.* ¶ 16.) This application was "accompanied by a
12 complete list of items required" for the application to be reviewed. (*Id.*) Nationstar "did not object
13 to" their application, and its acceptance of this application is "shown by [its] request for more
14 documents which were faxed on August 22, 2013." (*Id.* ¶ 16, Ex. G, ECF No. 79-2.) Nationstar
15 thereafter made another request for documents, some of which had not been requested before, and
16 those documents were faxed on September 23, 2013. (*Id.* ¶¶ 16, 31, Ex. G, ECF No. 79-2.)

17 On August 28, 2013, Quality Loan Service Corporation[4] recorded a Notice of Trustee's Sale.
18 (*Id.* ¶ 17, Ex. H, ECF No. 79-3.) The trustee's sale was scheduled to take place on September 26,
19 2013. (*Id.* ¶ 17.) This was just three days after Plaintiffs faxed documents to Nationstar in response
20 to its last request for additional documents. (*Id.*)

21 Despite Plaintiffs' continually supplying Nationstar with additional information in support of
22 their pending loan modification application, and unbeknownst to them, the trustee's sale took place
23 on September 26, 2013. (*See id.* ¶ 18; RJN, Ex. H ("Trustee's Deed Upon Sale"), ECF No. 7-2 at
24 56-57.) Nationstar purchased the Property for $424,037.53. (Trustee's Deed Upon Sale, ECF No.
25 7-2 at 56-57.)

---

[4] Margaret and Theresa allege that Nationstar recorded this Notice of Trustee's Sale, but the Notice plainly says that Quality Loan Service Corporation did. And in previous iterations of the complaint, Margaret and Theresa alleged that Quality Loan Service Corporation recorded it.

C 14-01295 LB
ORDER                                    4

Plaintiffs first learned that the Property had been sold at the trustee's sale when they received a letter in November 2013 from an attorney who had been retained to help Nationstar gain possession of the Property. (*Id.* ¶ 18, Ex. I, ECF No. 79-4.) They then told the attorney that they "considered Nationstar's conduct to be dual tracking," and "[n]o further action was taken by Nationstar to evict Margaret from the [Property.]" (*Id.* ¶ 18.)

By letter dated December 3, 2013 (more than two months after the Property was sold at the trustee's sale), Nationstar notified Plaintiffs that their July 30, 2013 loan modification application was denied. (*Id.* ¶ 19.) "The stated reason for this rejection was that [Nationstar was] unable to verify that [the P]roperty was owner[-]occupied by Theresa." (*Id.*)

Later in December 2013, Plaintiffs were contacted by a representative of Jorge Losada, who apparently purchased the Property from Nationstar on December 3, 2013. (*Id.*)

## II. THE INSTANT ACTION

Plaintiffs filed their Complaint against Nationwide and Does 1-100 in Alameda County Superior Court on February 4, 2014. (Complaint, ECF No. 1 at 14-20.) After three rounds of motions to dismiss, the operative complaint is Plaintiffs' Third Amended Complaint. They bring three claims: (1) violation of California Civil Code § 2923.6(c) & (d) with respect to their August 30, 2012 loan modification application; (2) violation of California Civil Code § 2923.6(c) & (d) with respect to their July 30, 2013 loan modification application; and violation of the California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.* (TAC ¶¶ 20-42.)

Nationstar now moves to dismiss Plaintiffs' Third Amended Complaint. (Motion, ECF No. 80.) Plaintiffs filed what appears to be the final page of an opposition, and Nationstar filed a reply. (Opposition, ECF No. 87; Reply, ECF No. 89.) Thereafter, Plaintiff apparently tried to file his full opposition (the docket entry says that it is a "corrected complete document"), but what was filed was just another copy of the Third Amended Complaint. (4/9/2015 Document, ECF No. 90.)

## ANALYSIS

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

### A. Plaintiffs' First Claim for Violation of Cal. Civ. Code § 2923.6(c) & (d)

In their first claim, Plaintiffs allege that Nationstar violated Cal. Civ. Code § 2923.6(c) and (d) with respect to their August 30, 2012 loan modification application. (TAC ¶¶ 20-26.) As the court explained in previous orders, Cal. Civ. Code § 2923.6(c) and (d) were enacted as part of California's Homeowner Bill of Rights ("HBOR"). Generally speaking, HBOR is a California state law that provides protections for homeowners facing foreclosure and reforms some aspects of the foreclosure process. Its purpose is "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4(a). As for Cal. Civ. Code § 2923.6(c), that subsection provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

And Cal. Civ. Code § 2923.6(d) provides:

> (d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

Here, Nationstar first argues that Plaintiffs cannot state a claim for violation of Cal. Civ. Code § 2923.6(c) or (d) because Plaintiffs never submitted a "complete application" for a loan modification to Nationstar, and because they did not, the requirements set forth in Cal. Civ. Code § 2923.(c) and

1  (d) were never triggered. To be sure, Nationstar admits that Plaintiffs allege that they submitted a
2  complete application, *see* TAC ¶¶ 12, 14, but Nationstar says this allegation is belied by Plaintiffs'
3  other allegation that they had to respond to 11 requests for additional information from Nationstar
4  from November 2012 to July 25, 2013, *see id.* ¶ 13.

5  The court does not view Plaintiffs' allegations in this way. First, Plaintiffs allege that their
6  August 30, 2012 loan modification application was complete as of October 10, 2012, *see id.* ¶ 12,
7  and that Nationstar's subsequent requests asked for documents that they had already submitted, *see*
8  *id.* ¶ 13. Second, even if Plaintiffs only thought that their August 30, 2012 loan modification
9  application was complete as of October 10, 2012, *see id.* ¶ 12, and even if they still needed to
10 provide additional documents that had not already been submitted to Nationstar during the time from
11 November 2012 to July 2013, *see id.* ¶ 13, Plaintiffs still allege that a Nationstar representative
12 confirmed in July 2013 that their application was complete and was being considered by an
13 underwriter, *see id.* ¶¶ 14, 37. That Nationstar's July 25, 2013 letter denying the application says
14 that Plaintiffs did not submit all of the documents it requested does not conclusively establish this
15 statement as true, and the court must credit Plaintiffs' allegations at this stage in the litigation.
16 Those allegations say that Nationstar denied their application because it was incomplete, even
17 though Nationstar had confirmed that Plaintiffs' application in fact was complete.

18 Nationstar also argues that, even if the requirements set forth in Cal. Civ. Code § 2923.(c) and
19 (d) were triggered, Plaintiffs have not actually alleged that it violated them. As for subsection (c),
20 Nationstar says that Plaintiffs do not actually allege that foreclosure-related acts (*e.g.*, the recording
21 of a notice of default or a notice of trustee's sale) were taken at any time between October 2012
22 (when Plaintiffs allege their August 30, 2012 loan modification application was complete) and July
23 2013 (when Nationstar denied their August 30, 2012 loan modification application). In fact,
24 Nationstar says, Plaintiffs allege that a notice of trustee's sale was not recorded until "33 days after
25 the letter of denial [dated July 25, 2013] was written." (TAC ¶ 25.)

26 In the context of this particular action, the court rejects Nationstar's argument. In this iteration
27 and previous iterations of Plaintiffs' complaint, Plaintiffs' allegations frequently have been
28 incomplete and imprecise. It is true that in the Third Amended Complaint Plaintiffs do not allege

1    the complete history of the foreclosure proceedings that relate to the Property.  That said, Plaintiffs
2    previously alleged that Quality Loan Service Corporation, on behalf of Nationstar, recorded notices
3    of trustee's sales on November 8, 2012, and April 30, 2013.  (Second Amended Complaint, ¶ 11,
4    ECF No. 56.)  Moreover, the court—at Nationstar's request—previously took judicial notice of
5    those notices.  (RJN, Exs. E ("First Notice of Trustee's Sale"), F ("Second Notice of Trustee's
6    Sale"), ECF No. 7-2 at 47-48, 50-51.)  These notices were recorded after Plaintiffs' August 30, 2012
7    loan modification application was complete and before Nationstar denied that application.  It would
8    be a waste of time and judicial resources to require Plaintiffs to file yet another amended complaint
9    to fix this problem, and it is a bit problematic for Nationstar to ask the court to ignore documents
10   that it asked the court to consider earlier in this action.

11       Nationstar further argues that "Plaintiffs' contention that they were not granted a 'right to a
12   review of the decision' is likewise misplaced because the July 25, 2013 letter does not constitute a
13   'denial' letter under [Cal. Civ. Code §] 2923.(d), but rather a letter informing Plaintiffs that they
14   could not be considered because the required documents were not received.  Because no complete
15   application was received, no review could be initiated, and no 'denial' could be issued."  (Motion,
16   ECF No. 80 at 9.)  The court rejects this argument, too.  As stated above, Plaintiffs do allege that
17   their application was complete, and this allegation is not belied by their other allegations.  Plaintiffs
18   also allege that Nationstar's letter did deny their application, and Nationstar submits no authority for
19   its argument that a letter stating that it is "unable to offer you a Home Affordable Modification" is
20   not a denial.  More significantly, the letter does not say, as Nationstar argues, that Plaintiffs'
21   application "could not be considered"; it says that Nationstar is "unable to offer" them a loan
22   modification and it also tells Plaintiffs that they can call Nationstar about "the reason for non-
23   approval for a HAMP modification" and "the reason for the denial of your request."

24       Having rejected Nationstar's arguments, the court denies Nationstar's motion to dismiss
25   Plaintiffs' first claim.

26       **B.  Plaintiffs' Second Claim for Violation of Cal. Civ. Code § 2923.6(c) & (d)**

27       In their second claim, Plaintiffs allege that Nationstar violated Cal. Civ. Code § 2923.6(c) and
28   (d) with respect to their July 30, 2013 loan modification application.  (TAC ¶¶ 27-34.)  Nationstar

argues that Plaintiffs' July 30, 2013 application was complete and being considered by Nationstar when Quality Loan Service Corporation, on behalf of Nationstar, recorded a notice of trustee's sale on August 28, 2013.

This time, the court agrees with Nationstar. Although Plaintiffs allege that their application was "accompanied by a complete list of items required" for the application to be reviewed, TAC ¶ 16, they also allege that Nationstar thereafter asked them to submit additional documents, some of which had not been requested before, see *id.* ¶ 31. And unlike with respect to their August 30, 2012 application, Plaintiffs do not allege that a Nationstar representative confirmed that everything had been submitted. Because Plaintiffs do not sufficiently allege that their July 30, 2013 application was complete, the requirements set forth in Cal. Civ. Code § 2923.(c) and (d) were not triggered. Thus, Plaintiffs claim fails. The court grants Nationstar's motion to dismiss Plaintiffs' second claim and dismisses it with prejudice.

**C. Plaintiffs' Third Claim for Violation of the Rosenthal Fair Debt Collection Practices Act**

For their third claim, Plaintiffs allege that Nationstar violated the Rosenthal Fair Debt Collection Practices Act with respect to both of their loan modification applications. (TAC ¶¶ 35-42.)

The RFDCPA "regulates the collection of 'consumer debts,' which are defined as transactions by which 'property, services or money is acquired on credit . . . primarily for personal, family, or household purposes." *Quinlan v. Citimortgage, Inc.*, No. 2:11-cv-00986–MCEEFB, 2011 WL 5299311, at *2 (E.D. Cal. Nov.2, 2011). It is intended to "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1. While providing its own standards governing debt-collection practices, the RFDCPA also provides, with limited exceptions, that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq. See* Cal. Civ. Code § 1788.17. One of these incorporated FDCPA provisions is that which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15 U.S.C. § 1692e.

1    Nationstar argues that Plaintiffs do not sufficiently allege that Nationstar engaged in "debt
2 collection." It made this argument with regard to Plaintiffs' Second Amended Complaint, and the
3 court ruled as follows:

> Even so, Nationstar also argues that the RFDCPA does not apply because it has not engaged in "debt collection." Nationstar cites several opinions holding that the mere allegation that a defendant foreclosed on a deed of trust is not sufficient to state a claim under the RFDCPA. *See*, *e.g.*, *Gamboa v. Trustee Corps.*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) ("[T]he law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the RFDCPA or the FDC[P]A. Therefore, as the trustee under the Deed of Trust with the power to sell the foreclosed property, Trustee Corps cannot have violated the RFDCPA and the FDC[P]A."); *Putkkuri v. Recontrust Co.*, No. 08cv1919 WQH (AJB), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) ("The Complaint fails to state a claim under the FDCPA or the RFDCPA because Plaintiff challenges the lawfulness of foreclosure proceedings on her home pursuant to a deed of trust; Plaintiff does not allege that Defendants were debt collectors, collecting a debt within the meaning of the FDCPA or the RFDCPA.").
>
> The RFDCPA, however, incorporates provisions of the FDCPA, *see* Cal. Civ. Code § 1788.17 ("every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. §§] 1692b to 1692j"), and "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process," federal courts have held that "a remedy may be available under the FDCPA," *Lohse v. Nationstar Mortg.*, Case No. 14-cv-00514-JCS, 2014 WL 535896, at *9 (N.D. Cal. Oct. 20, 2014) (citing *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (finding that allegedly deceptive statements in an offer letter related to a forbearance agreement were sufficient to state a claim under the FDCPA)). *See also Boessenecker v. JPMorgan Chase Bank*, No. C 13-491 MMC, 2013 WL 3856242, at *5 (N.D. Cal. July 24, 2013) ("The issue in *Gamboa*, however, was whether a claim under the RFDCPA can be based on a foreclosure. Here, by contrast, plaintiffs' claim is based on conduct other than a foreclosure, and, consequently, defendant's reliance on *Gamboa* is unavailing.") (citations omitted); *Walters v. Fid. Mortgage of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (allegations that defendant engaged in pattern of improper conduct in course of servicing a loan are sufficient to plead debt collection under the RFDCPA). Here, Plaintiffs seem to be alleging that it was Nationstar's actions with respect to Plaintiffs' loan modification applications, *see* SAC ¶¶ 27-36, rather than or in addition to Nationstar's foreclosure-related actions, that violated the RFDCPA. To the extent that Plaintiffs allege that (or can allege that in a third amended complaint), the court rejects Nationstar's argument.

23  (2/12/2015 Order, ECF No. 75 at 13-14 (footnote omitted).)

24    In their Third Amended Complaint, Plaintiffs have made clear that it is Nationstar's actions with
25 respect to Plaintiffs' loan modification applications, rather than or in addition to Nationstar's
26 foreclosure-related actions, that violated the RFDCPA. As for the August 30, 2012 application,
27 Plaintiffs allege that Nationstar's July 25, 2013 rejection of their application for not submitting all
28 required documents was contrary to Nationstar's representative's statement that Plaintiffs in fact had

UNITED STATES DISTRICT COURT
For the Northern District of California

submitted all required documents and that their application had been sent to an underwriter for review. (TAC ¶ 38.) And as for July 30, 2013 application, Plaintiffs allege that Nationstar gave "the false impression to [P]laintiffs that their mortgage modification request faxed on July 30, 2013 was being processed in good faith," and as a result of this impression, Plaintiffs "did not take any further steps to protect" the Property from foreclosure. (*Id.* ¶ 40.) While not a model of pleading, the court believes that Plaintiffs' allegations sufficiently allege that Nationstar was engaging in "debt collection." As the legal standard quoted above makes clear, contrary to Nationstar's argument, Plaintiffs do not necessarily have to allege a "pattern of improper conduct" to allege "debt collection"; they have to allege only "debt collection activities beyond the scope of the ordinary foreclosure process." The court believes Plaintiffs did this. Accordingly, the court denies Nationstar's motion to dismiss Plaintiffs' third claim.

## CONCLUSION

Based on the foregoing, the court grants in part and denies in part Nationstar's motion. Plaintiffs' second claim is dismissed with prejudice and their first and third claims survive. Nationstar shall answer their Third Amended Complaint within 14 days from the date of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: April 10, 2015

_____
LAUREL BEELER
United States Magistrate Judge